**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                                          :          Chapter 11
                                                               :
ROXANNE GAIL CARFORA, D.O., P.C. d/b/a     :          Case No. 15-74328
AGELESS 360 MEDICAL GROUP, P.C.             :
                                                               :
                                Debtor.                :
-----------------------------------------------------------------x

## PLAN OF LIQUIDATION OF ROXANNE GAIL CARFORA, D.O., P.C. D/B/A AGELESS 360 MEDICAL GROUP, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Klestadt Winters Jureller Southard & Stevens, LLP
200 W. 41st St., 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtor and Debtor in Possession*

Dated: New York, New York
         April 7, 2016

# TABLE OF CONTENTS

ARTICLE 1 – DEFINITIONS AND RULES OF INTERPRETATION ........................... 1

    A.  Definitions .................................................................................................. 1

    B.  Rules of Interpretation ............................................................................... 7

ARTICLE 2 – PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED ........ 7

    2.1.  Claims Not Classified ............................................................................ 7

    2.2.  Administrative Expense Claims .............................................................. 7

    2.3.  Professional Fee Claims ......................................................................... 7

ARTICLE 3 – CLASSIFICATION OF CLAIMS AND INTERESTS ............................ 8

    3.1.  Criterion of Class ................................................................................... 8

    3.2.  Class Categories .................................................................................... 8

ARTICLE 4 – TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ............. 8

    4.1.  Class 1A, Class 1B, Class 1C (Secured Claims) ...................................... 8

    4.2.  Class 2 (Priority Claims) ........................................................................ 8

    4.3.  Class 3 (General Unsecured Claims) ....................................................... 8

    4.4.  Class 4 (Interests) .................................................................................. 8

    4.5.  Cram Down ........................................................................................... 8

ARTICLE 5 – MEANS OF IMPLEMENTATION OF THE PLAN ............................... 9

    5.1.  Establishment of Reserves and Funds ..................................................... 9

        a)   Administrative Reserve ................................................................... 9

        b)   Unsecured Creditor Fund .............................................................. 10

    5.2.  Plan Distributions ................................................................................ 10

        a)   Initial Distributions of Cash ......................................................... 10

        b)      Subsequent Distributions of Cash ................................................... 10

5.3.    Preservation and Abandonment of Records ............................................. 10

5.4.    General Disposition of Assets .................................................................. 10

5.5.    Administrative Expense Claims Bar Date ............................................... 10

5.6.    Deadline for Filing Applications for Professional Fee Claims ................. 11

5.7.    Execution of Documents to Effectuate Plan ............................................ 11

5.8.    Disallowance of Claims without Further Order of the Court ................... 11

5.9.    Continued Existence of Debtor Until Closing of the Case ....................... 11

5.10.  Post-Confirmation Reports and Fees ....................................................... 11

5.11.  Cancellation of Interests .......................................................................... 12

5.12.  Insurance Preservation ............................................................................ 12

ARTICLE 6 – TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED
           LEASES .................................................................................. 12

6.1.    General Provisions ................................................................................... 12

6.2.    Notice of Deemed Rejection/Rejection Bar Date .................................... 12

ARTICLE 7 – CONDITIONS PRECEDENT; CONFIRMATION &
           EFFECTIVE DATE ................................................................. 12

7.1.    Conditions Precedent to Confirmation of the Plan .................................. 12

7.2.    Conditions Precedent to the Effective Date ............................................. 13

7.3.    Waiver of Conditions Precedent .............................................................. 13

ARTICLE 8 – INJUNCTION; RELEASE; EXCULPATION ......................................... 13

8.1.    General Injunctions .................................................................................. 13

        a)      Injunctions Against Interference with Consummation or
             Implementation of the Plan ............................................................... 13

        b)      Plan Injunction ................................................................................. 13

8.2.    All Distributions Received in Full and Final Satisfaction ........................ 14

8.3.    No Modification of Res Judicata Effect.................................................... 14

8.4.    Exculpation ............................................................................................. 14

8.5.    Release of Liens ...................................................................................... 15

8.6.    Preservation of All Retained Causes of Action Not Expressly Settled or
         Released ................................................................................................. 15

ARTICLE 9 – PROVISIONS GOVERNING DISTRIBUTIONS ................................... 16

9.1.    Payment in U.S. Dollars........................................................................... 16

9.2.    Distributions Only on Business Days ....................................................... 16

9.3.    Unclaimed Distributions .......................................................................... 16

9.4.    Timing of Distributions on Disputed Claims Subsequently Allowed ...... 16

9.5.    No Payment or Distribution on Disputed Clams ...................................... 16

9.6.    Disputed Distribution............................................................................... 16

9.7.    Transmittal of Payments and Notices ...................................................... 17

9.8.    Record Date for Distributions.................................................................. 17

9.9.    Claims Administration Responsibility...................................................... 17

         a)    Reservation of Rights...................................................................... 17

         b)    Objections to Claims....................................................................... 17

         c)    Filing Objections............................................................................ 18

         d)    Determination of Claims................................................................. 18

9.10.   Disputed Claims....................................................................................... 18

9.11.   No Payments of Fractional Cents or Distributions of Less Than
         Twenty-Five Dollars ............................................................................... 19

9.12.   Setoff and Recoupment............................................................................ 19

9.13.  Payment of Taxes on Distributions Received Pursuant to the Plan .......... 19

9.14.  Compliance with Tax Withholding and Reporting Requirements ............ 19

ARTICLE 10 – PLAN INTERPRETATION, CONFIRMATION AND VOTING ........ 20

10.1.  Procedures Regarding Objections to Designation of Classes as Impaired
or Unimpaired ............................................................................................. 20

10.2.  Withdrawal and Modification of Plan ......................................................... 20

10.3.  Governing Law ........................................................................................... 20

10.4.  Voting of Claims ......................................................................................... 20

10.5.  Acceptance by Impaired Class .................................................................... 20

10.6.  Presumed Acceptances of Plan ................................................................... 20

10.7.  Presumed Rejections of Plan ...................................................................... 20

ARTICLE 11 – RETENTION OF JURISDICTION BY BANKRUPTCY COURT ....... 21

ARTICLE 12 – MISCELLANEOUS PROVISIONS ...................................................... 21

12.1.  Headings ..................................................................................................... 21

12.2.  No Attorneys' Fees ..................................................................................... 22

12.3.  Notices ........................................................................................................ 22

12.4.  No Discharge ............................................................................................... 22

12.5.  Claims in Dollars ........................................................................................ 22

12.6.  Binding Effect ............................................................................................. 22

# INTRODUCTION

Roxanne Gail Carfora, D.O., P.C. d/b/a Ageless 360 Medical Group ("Ageless" or the "Debtor"), proposes this chapter 11 plan (the "Plan") pursuant to section 1121 of the Bankruptcy Code.

## ARTICLE 1 - DEFINITIONS AND RULES OF INTERPRETATION

## A.    Definitions

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

**1.1**    "Administrative Expense Claim" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(1) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's business during the Bankruptcy Case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business during the Bankruptcy Case, (c) any Professional Fee Claims, whether fixed before or after the Effective Date, (d) any costs and expenses for the management, maintenance, preservation, sale, or other disposition of any Assets, and (e) any fees or charges assessed against the Debtor's Estate under section 1930, chapter 123, title 28, United States Code.

**1.2**    "Administrative Expense Claims Bar Date" shall have the meaning set forth in Section 5.5 of the Plan.

**1.3**    "Administrative Reserve" means a reserve as provided in Section 5.1 hereof, to fund post-confirmation costs and expenses.

**1.4**    "Allowed Administrative Expense Claim" means an Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

**1.5**    "Allowed Claim/Allowed Interest" means a Claim or Interest against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules, or (ii) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtor in its Schedules as liquidated in an amount and not disputed or contingent, as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Bar Date, or as to which an objection has been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order, or (iii) a claim or interest that is allowed by final order of the Bankruptcy Court.  For purposes hereof, an "Allowed Claim" shall include any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of this Plan, or any Claim that has been allowed by a Final Order, provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the

Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Involuntary Petition Date; and (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

**1.6** "Asset Purchase Agreement between the Debtor and Purchaser, pursuant to which the Debtor sold substantially all of its assets to Purchaser.

**1.7** "Assets" means any and all property of the Estate, including without limitation all property and other interests identified in section 541(a) of the Bankruptcy Code. Without limiting the foregoing, Assets shall include all of the Debtor's real, personal, tangible and intangible property, wherever located and whether acquired prior to or after the Involuntary Petition Date, including Cash, furniture, fixtures, equipment, artwork, intellectual property, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements and accessions thereof.

**1.8** "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

**1.9** "Ballot" means the form distributed to the holder of an impaired Claim on which it is to be indicated whether such holder accepts or rejects the Plan.

**1.10** "Bankruptcy Case" means the case concerning the Debtor, commenced on October 9, 2015, under chapter 11 of the Bankruptcy Code, administered under case number 15-74328 (REG) in the United States Bankruptcy Court for the Eastern District of New York.

**1.11** "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Bankruptcy Case.

**1.12** "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Eastern District of New York wherein the Bankruptcy Case is pending.

**1.13** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect and applicable to the Debtor's Bankruptcy Case.

**1.14** "Bar Date" means December 28, 2015, the date established by the Bankruptcy Court as the deadline to file proofs of claim, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of claim, in which case it means, for such specific Creditor, such different date set by the Court.

**1.15** "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**1.16** "Cash" means legal tender of the United States of America.

**1.17** "Causes of Action" means any and all Claims, rights, actions, chose in action, suits, causes of action, liens, judgments and damages, including Avoidance Actions, belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to or after the Petition Date, and in each case whether known or unknown, in law, equity or otherwise.

**1.18** "Claim" means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.19** "Claim Transfer Document" shall have the meaning set forth in Section 9.8 of the Plan.

**1.20** "Claims Objection Bar Date" means, unless otherwise extended by Order of the Court, the first Business Day that is 90 days after the Effective Date.

**1.21** "Class" means a category of Claims or Interests described in Article 3 of the Plan.

**1.22** "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.23** "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

**1.24** "Creditor" means any Person holding a Claim against the Debtor or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen on or prior to the Involuntary Petition Date, including, without limitation, a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**1.25** "Debtor" means Roxanne Gail Carfora, D.O., P.C. d/b/a Ageless 360 Medical Group, the debtor in the Bankruptcy Case.

**1.26** "Deficiency Claim" means that portion of any Allowed Claim held by a Secured Creditor which exceeds the value of the assets securing such Allowed Claim.

**1.27** "Disallowed" means, when referring to a Claim or Interest, a Claim (including a Scheduled Claim) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

**1.28** "Disclosure Statement" means the disclosure statement for the Plan and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

3

**1.29** "Disclosure Statement Order" means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

**1.30** "Disputed" means, with respect to a Claim against or Interest in, the Debtor, the extent the allowance of such Claim or Interest is the subject of a timely objection, complaint or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice, or determined by a Final Order.

**1.31** "Distribution" means any distribution made pursuant to the terms of this Plan.

**1.32** "Distribution Agent" means Klestadt Winters Jureller Southard & Stevens, LLP, the agent selected by the Debtor to effectuate and administer Distributions under the Plan.

**1.33** "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan. The first Distribution shall occur as soon as practicable, on or after the Effective Date. To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Debtor shall reasonably determine is appropriate in light of (i) the amount of funds on hand; (ii) the amount and nature of disputed claims; (iii) the activities to be accomplished, including their anticipated duration and costs; (iv) the length of time since any prior Distribution; (v) the costs of effecting and interim Distribution.

**1.34** "Effective Date" means the first Business Day after the entry of the Confirmation Order that (i) the conditions to effectiveness of the Plan set forth in Section 7.2 of the Plan have been satisfied or otherwise waived, and (ii) the effectiveness of the Confirmation Order has not been stayed.

**1.35** "Effective Date Cash" means all Cash held by or on behalf of the Debtor as of the Effective Date.

**1.36** "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Involuntary Petition Date.

**1.37** "Fee Application Deadline" shall have the meaning set forth in Section 5.7 of the Plan.

**1.38** "Final Order" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the

Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

**1.39** "General Unsecured Claim" means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Professional Fee Claim, Priority Tax Claim, or Non-Tax Priority Claim.

**1.40** "General Unsecured Creditor" means any holder of a General Unsecured Claim.

**1.41** "Interest" means the ownership and related rights and interests of Dr. Roxanne Carfora, the sole shareholder of the Debtor.

**1.42** "Non-Tax Priority Claim" means a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, which is entitled to priority in payment under sections 507(a)(1), (2) (3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**1.43** "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

**1.44** "Petition Date" means October 9, 2015.

**1.45** "Plan" means this Plan and any exhibits annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**1.46** "Post-Confirmation Expenses" means any administrative expenses, including all fees and expenses of the Distribution Agent and any Professionals retained by the Debtor after the Effective Date.

**1.47** "Priority Tax Claim" means a Claim or a portion of a Claim of a governmental unit against the Debtor which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.48** "Professional Fee Claim" means any Claim of a professional retained in the Bankruptcy Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.49** "Professionals" means those professional persons, including lawyers, financial advisors, and accountants retained by the Debtor during the Bankruptcy Case.

**1.50** "Pro Rata" means, in connection with a particular Allowed Claim or Allowed Interest and in connection with any Distribution, the ratio between the amount of such Allowed Claim or Allowed Interest and the aggregate amount of all Allowed Claims or Allowed Interests in such Class or Classes entitled to such Distribution.

**1.51** "Purchaser" means Main Street Medical, P.C., which submitted the highest and best bid for the Debtor's assets.

**1.52** "Record Date" shall have the meaning set forth in Section 9.8 of this Plan.

**1.53** "Scheduled Claim" means a Claim that is listed in the Debtor's Schedules.

**1.54** "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statement of financial affairs, and other schedules and statements filed by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

**1.55** "Secured Claim" means a Claim secured by a lien, as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a judicial lien as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.56** "Secured Creditor" means the holder of a Secured Claim.

**1.57** "Tax Information" shall have the meaning set forth in Section 9.13(a) of this Plan.

**1.58** "Tax Information Request" shall have the meaning set forth in Section 9.13(b) of this Plan.

**1.59** "U.S. Trustee" means any and all representatives and employees of the Office of the United States Trustee for the Eastern District of New York.

**1.60** "Unclaimed Distribution" means any Distribution after the applicable Distribution Date, unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a valid address.

**1.61** "Unsecured Claim" means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

**1.62** "Unsecured Creditor Fund" means the current Cash held by the Debtor less any Distributions or reserves on account of Secured Claims, Administrative Claims, Professional Fee Claims, Priority Tax Claims, Priority Claims, and/or Post-Confirmation Expenses.

**B.**     **Rules of Interpretation**

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural;  (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a holder of a Claim or Interest includes that Person's successors, assigns and affiliates; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein", "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan.   To the extent that the Plan is inconsistent with the Disclosure Statement, unless such document specifically states otherwise, the provisions of the Plan shall be controlling.

## ARTICLE 2 - PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

**2.1**     **Claims Not Classified**.

No classes are designated for Administrative Expense Claims and Professional Fee Claims.

**2.2**     **Administrative Expense Claims**.

All Allowed Administrative Expense Claims, other than Professional Fee Claims, shall be paid in full, in Cash, in such amounts as are incurred in the ordinary course of the liquidation of the Debtor, or in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation, or (c) as may be agreed upon between the holder of any such Administrative Expense Claim and the Debtor.  In the event there exists any Disputed Administrative Expense Claims on the Effective Date, the Debtor shall at all times hold and maintain Cash in an amount attributable to all Disputed Administrative Expense Claims.

**2.3**     **Professional Fee Claims**.

The Debtor shall pay all Professional Fee Claims as soon as practicable after a Final Order has awarded such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.7 hereof.  In the event any Disputed Professional Fee Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal to all Disputed Professional Fee Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.

## ARTICLE 3 - CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1**     <u>Criterion of Class</u>.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

**3.2**     <u>Class Categories</u>.

The following classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Class Designation | Status | Entitled to Vote |
|---|---|---|---|
| Class 1A | 134 S. Central Ave. Corp. Secured Claim | Impaired | Yes |
| Class 1B | Kirschenbaum & Kirschenbaum, P.C. Secured Claim | Impaired | Yes |
| Class 1C | Leonard and Ramona DeMarco Secured Claim | Impaired | Yes |
| Class 2 | Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| Class 4 | Interests | Impaired | No (Deemed to Reject) |

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The following treatment of and consideration to be received by holders of Allowed Claims and Allowed Interests pursuant to this Plan shall be in full settlement, release and discharge of such Allowed Claims and Allowed Interests.

**4.1**     <u>Class 1A, Class 1B, Class 1C (Secured Claims)</u>.

On the Effective Date, or as soon thereafter as is reasonably practical, each holder of an Allowed Secured Claim shall receive (i) the net proceeds of the disposition of any collateral which is pledged as security for such Allowed Secured Claim and which remains in possession and control of the Estate and in accordance with the APA; or (ii) such other, less favorable treatment as may be agreed to in writing by the holder of such Allowed Secured Claim and the Debtor. Any Deficiency Claim which may arise on account of the present lack of collateral or otherwise resulting from the aforesaid treatment shall be included in and treated as a Class 3 General Unsecured Claim. Nothing in the Plan shall be construed to alter or waive the rights of the Debtor to contest the validity of any Secured Claim. In the event any Disputed Secured Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal

to all Disputed Secured Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.

### 4.2    Class 2 (Priority Claims).

On the Effective Date, or as soon thereafter as is reasonably practical, in full satisfaction of such Allowed Priority Claim, each holder of an Allowed Priority Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Priority Claim, or (b) such other treatment as to which the Debtor and the holder of such Allowed Priority Claim shall have agreed upon in writing.  In the event any Disputed Priority Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal to all Disputed Priority Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.

### 4.3    Class 3 (General Unsecured Claims).

On the Effective Date, or as soon thereafter as is reasonably practical, in full satisfaction of such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive one or more Distributions equal to its *Pro Rata* share of the Unsecured Creditor Fund.  In the event any Disputed General Unsecured Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal to all Disputed General Unsecured Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.

### 4.4    Class 4 (Interests).

No holder of an Interest shall be entitled to a Distribution under the Plan on account of such Interest.

### 4.5    Cram Down.  If any class of Claims fails to accept the Plan in accordance with § 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting, impaired Class.

## ARTICLE 5 - MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1    Establishment of Reserves and Funds.

a)    Administrative Reserve. On the Effective Date or as soon thereafter as is practicable, the Administrative Reserve shall be established by the Debtor.  If the Debtor determines that additional funding of the Administrative Reserve is required, from time to time following the Effective Date, such funding shall be made from the Unsecured Creditor Fund. The Administrative Reserve shall be used to pay the Post-Confirmation Expenses, including, without limitation, costs and expenses of counsel or other advisors retained by the Debtor.  Any amounts remaining in the Administrative Reserve after all Post-Confirmation Expenses are paid shall be deposited into the Unsecured Creditors Fund and shall become available for Distribution to holders of Allowed Unsecured Claims in the priority of payment provided for in accordance with the provisions of the Plan.

b)      <u>Unsecured Creditor Fund</u>. As soon as practicable following the Effective Date, the Unsecured Creditor Fund shall be established by the Debtor which shall be distributed in accordance with the terms of the Plan.

### 5.2      **Plan Distributions**.

Following the Effective Date, and subject to the establishment and funding of the Administrative Reserve as set forth above, and as set forth in greater detail in Article IV of the Plan, Distributions shall be made by the Distribution Agent as follows:

a)      <u>Initial Distributions of Cash</u>:  On the first Distribution Date following the Effective Date, the Distribution Agent shall, pursuant to the terms of the Plan, make Distributions from the Effective Date Funds to holders of the Allowed Secured Claims to the extent of available proceeds of collateral as set forth in Section 4.1 of the Plan, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims, Allowed Non-Tax Priority Claims, and to General Unsecured Claims in accordance Article IV of the Plan.  Accounts Receivable collected by Purchaser pursuant to the terms of the APA will be remitted to the  Distribution Agent for further distribution under the terms of this Plan.

b)      <u>Subsequent Distributions of Cash</u>:   On each Distribution Date, the Distribution Agent shall, pursuant to the terms of the Plan, make Distributions to holders of Allowed General Unsecured Claims in an amount equal to such Creditor's *Pro Rata* share, if any, of Cash held in the Unsecured Creditor Fund on such Distribution Date. Such subsequent Distributions shall occur as soon after the first Distribution Date as the Debtor shall reasonably determine is appropriate in light of (i) the amount of funds on hand; (ii) the amount and nature of disputed claims; (iii) the activities to be accomplished, including their anticipated duration and costs; (iv) the length of time since any prior Distribution; (v) the costs of effecting an interim Distribution.

### 5.3      **Preservation and Abandonment of Records**.

The Debtor shall preserve for the benefit of the Estate, all documents and files, including electronic data hosted on remote servers that are necessary to the prosecution of the Causes of Action and claims resolution process (the "<u>Retained Information</u>"). After the Effective Date, the Debtor shall preserve the Retained Information until the date that is one (1) year following the closing of the Bankruptcy Case. On the Effective Date, the Debtor shall be permitted to abandon (with or without destruction), any information that is not Retained Information.

### 5.4      **General Disposition of Assets**.

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of the Plan, as soon as is reasonably practicable following the Effective Date, the Debtor shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash Assets in such manner as the Debtor shall determine in its judgment is in the best interests of the Estate.

### 5.5      **Administrative Expense Claims Bar Date**.

Persons asserting an Administrative Expense Claim (other than Professional Fee Claims) must file a request for payment of such Administrative Expense Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after the Effective Date (the "Administrative Expense Claims Bar Date"). No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Expense Claim that fails to file and serve an Administrative Expense Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor and/or the Estate.

**5.6    Deadline for Filing Applications for Professional Fee Claims**.

All parties seeking payment of Professional Fee Claims arising prior to the Effective Date must file with the Bankruptcy Court and serve upon the Debtor a final application and/or an application for payment of reasonable fees and expenses under section 503(b) of the Bankruptcy Code, as applicable, on or before the first Business Day after the thirtieth (30th) day after the Effective Date (the "Fee Application Deadline"). Any Professional failing to file and serve such final application or 503(b) motion on or before the Fee Application Deadline shall be forever barred from asserting any such right to payment against the Debtor or the Estate.

**5.7    Execution of Documents to Effectuate Plan**.

From and after the Confirmation Date, the Debtor shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Debtor to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.

**5.8    Disallowance of Claims without Further Order of the Court**.

As of the Confirmation Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Creditor, shall be deemed disallowed and expunged. All Scheduled Claims that correspond to a proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed proof of Claim and the Scheduled Claims, regardless of priority, and shall be expunged from the claims register; provided however, that such proofs of Claim shall be subject to objection in accordance with Section 9.10 hereof.

**5.9    Continued Existence of Debtor Until Closing of the Case**.

Following the Effective Date, the Debtor shall continue in existence for the purposes of, among other things, completing the liquidation of its Assets, winding up its affairs and filing appropriate tax returns. Upon the entry of an order closing the Bankruptcy Case, the Debtor shall be deemed dissolved for all purposes. No other actions or filings or payments shall be required in furtherance of such dissolution.

**5.10    Post-Confirmation Reports and Fees**.

Following the Effective Date and until the Case is closed, not less than once every one-hundred and eighty (180) days, the Debtor shall be responsible for the filing of all post-Effective

Date reports required during such periods with the U.S. Trustee and payment from the Debtor's Estate of all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

**5.11** **Cancellation of Interests**.

On the Effective Date, all existing Interests, shall, without any further action, be cancelled, annulled, and extinguished and any certificates representing such canceled, annulled, and extinguished Interests shall be null and void.

**5.12** **Insurance Preservation**.

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor, its employees, its shareholders or any other Person.

## ARTICLE 6 - TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES

**6.1** **General Provisions**.

All executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

**6.2** **Notice of Deemed Rejection/Rejection Bar Date**.

Any party to an executory contract or unexpired lease that is rejected in accordance with Section 6.1 shall file a proof of Claim for damages from such rejection no later than thirty (30) days after the Effective Date.  The failure to timely file a proof of Claim shall be deemed a waiver of any Claim in connection with the rejection of such contract or lease.

## ARTICLE 7 - CONDITIONS PRECEDENT; CONFIRMATION & EFFECTIVE DATE

**7.1** **Conditions Precedent to Confirmation of the Plan**.

The following conditions must be satisfied, or otherwise waived by the Debtor (or, as applicable, Dr. Carfora) in accordance with Section 7.3, on or before the Confirmation Date:

a)    The Disclosure Statement Order shall have been entered and shall have become a Final Order; and

b)    The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; and (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud.

**7.2    Conditions Precedent to the Effective Date**.

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof, on or before the Effective Date:

a)    The Confirmation Order shall have been entered and no stay of its effectiveness of the same shall have been issued within fourteen (14) days following the entry of the Confirmation Order.

**7.3    Waiver of Conditions Precedent**.

Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified without further Court approval, in whole or in part; provided, however, that the condition precedent in Section 7.1(a) hereof may only be waived by Dr. Carfora.

## ARTICLE 8 - INJUNCTION; RELEASE; EXCULPATION

**8.1    General Injunctions.**

**The following provisions shall apply and shall be fully set forth in the Confirmation Order.**

**a)    Injunctions Against Interference with Consummation or Implementation of Plan.    All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor or the Estate with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.**

**b)    Plan Injunction The rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor, its successors and assigns or any of its assets or properties.    On the Effective Date, all such Claims against the Debtor shall be satisfied and released in full.**

**Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim satisfied and released hereby, from:**

i.    **commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors, their successors and assigns, and any of their assets and properties;**

ii.    **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, their**

**successors and assigns, and any of their assets and properties;**

iii.    **creating, perfecting or enforcing any encumbrance of any kind against any Debtor, their successors and assigns, and any of their assets and properties;**

iv.    **asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor, or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or**

v.    **commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Cause of Action released or settled hereunder.**

**From and after the Effective Date, all Releasing Parties are permanently enjoined from commencing or continuing in any manner against the Debtor, its successors and assigns, and any of its assets and properties, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

## 8.2    <u>All Distributions Received in Full and Final Satisfaction</u>.

Except as otherwise set forth herein, all payments and all Distributions to be made in accordance with the Plan on account of Claims (including Administrative Expense Claims) shall be received in full and final satisfaction, settlement and release of the Estate's obligations for such Claims as against the Debtor, its property and the Estate.

## 8.3    <u>No Modification of Res Judicata Effect</u>.

The provisions of this Article 8 are not intended, and shall not be construed, to modify the *res judicata* effect of any order entered in the Bankruptcy Case, including, without limitation, the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

## 8.4    <u>Exculpation</u>.

**To the extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor, its shareholders, officers, directors (including, without limitation, Dr. Carfora), employees and professionals (including professional firms and individuals within such firms), and their respective officers, directors, employees and professionals (including professional firms and individuals within such firms), shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Bankruptcy Case, except for (i) acts or**

omissions as a result of willful misconduct or gross negligence and (ii) liability of any released person for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality or (c) laws regarding the regulation of securities administered by the SEC and (d) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to the Plan.

### 8.5    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Plan Administrator.

### 8.6    Preservation of All Retained Causes of Action Not Expressly Settled or Released.

a)    Unless a Cause of Action against a holder or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor expressly reserves such Cause of Action for later adjudication by the Debtor (including, without limitation, Causes of Action not specifically identified or described or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order). In addition, the Debtor expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

b)    Subject to the immediately preceding paragraph, any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that any such obligation, transfer or transaction may be reviewed by the Plan Administrator subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Person has filed a proof of claim against the Debtor in the Chapter 11 Cases; (ii) the Debtor has objected to any such Person's proof of claim; (iii) any such Person's Claim was included in the Schedules; (iv) the Debtor has objected

to any such Person's scheduled Claim; or (v) any such Person's scheduled Claim has been identified by the Debtor as disputed, contingent or unliquidated.

## ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

**9.1** **Payment in U.S. Dollars**.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Debtor in accordance with the Plan or by wire transfer from a domestic bank, at the option of the Debtor.  The Debtor may use the services of a third party to aid in the Distributions required to be made under this Plan, including the Distribution Agent.

**9.2** **Distributions Only on Business Days**.

Notwithstanding the foregoing provisions, if any Distribution called for under this Plan is due on a day other than a Business Day, such Distribution shall instead be made the next Business Day.

**9.3** **Unclaimed Distributions**.

Unclaimed Distributions (including Distributions made by checks that fail to be cashed or otherwise negotiated within ninety (90) days after the Distribution Date or which Distributions are returned to the Distribution Agent as undeliverable to the addresses specified in the Claims Register, as it shall exist on the date such Distributions are made), shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or order of the Bankruptcy Court, and the holder of such Claim(s) shall be removed from the Distribution schedules, expunged from the Claims register and shall receive no further Distributions under the Plan.  Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

**9.4** **Timing of Distributions on Disputed Claims Subsequently Allowed**.

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) business days after such Claim is Allowed.

**9.5** **No Payment or Distribution on Disputed Claims**.

Any contrary provision hereof notwithstanding, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim or some portion thereof is allowed by Final Order of the Bankruptcy Court.  For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution.  Holders of Disputed Claims shall be bound, obligated and governed in all respects by this Plan.

**9.6** **Disputed Distribution**.

If a dispute arises as to the identity of a holder of an Allowed Claim who is to receive a Distribution, the Debtor may, in lieu of making such Distribution to such holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

### 9.7    Transmittal of Payments and Notices.

All Distributions shall be made to the holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its proof of Claim filed with the Bankruptcy Court or, if no proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a holder of a Claim provides to the Debtor after the Effective Date in writing and files at least fifteen (15) business days prior to a Distribution Date.    Neither the Debtor nor the Distribution Agent shall have any duty to ascertain the mailing address of any holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing.  Payments made in accordance with the provisions of this Section shall be deemed made to the holder regardless of whether such holder actually receives the payment.

### 9.8    Record Date for Distributions.

Except as otherwise provided in a Final Order of the Bankruptcy Court, transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Effective Date (the "Record Date") shall be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Record Date.  The Debtor and the Distribution Agent shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.   In making a Distribution with respect to any Claim, the Debtor and the Distribution Agent shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the proof of claim filed with respect to such Claim, on the Debtor's Schedules as the holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Record Date.

### 9.9    Claims Administration Responsibility.

a)    Reservation of Rights.  Unless a Claim is specifically Allowed prior to or after the Effective Date, the Debtor reserves any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Non-Tax Priority Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Debtor's right to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

b)    Objections to Claims. The Debtor may dispute, object to, compromise or otherwise resolve all Claims.   Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than the Claims Objection Bar Date, which is sixty (60) days after the Effective Date, provided that the Debtor

may request (and the Bankruptcy Court may grant) an extension of time by filing a motion with the Bankruptcy Court.

        c)      <u>Filing Objections</u>.  An objection to a Claim shall be deemed properly served on the claimant if the Debtor effects service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's proof of claim at least thirty (30) days prior to the hearing thereon.

        d)      <u>Determination of Claims</u>.  Except as otherwise agreed by the Debtor, any Claim as to which a proof of claim or motion or request for payment was timely filed in the Bankruptcy Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law.  Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

    **9.10**    **<u>Disputed Claims</u>**.

        a)      Except to the extent the Court determines that a lesser amount is adequate, the Debtor shall, on each Distribution Date, deposit Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the holder of such Claim.

        b)      For purposes of effectuating the provisions of this Section 9.10 and the Distributions to holders of Allowed Claims, the Court, on or prior to the Effective Date, or thereafter upon the request of any holder of a Claim or the Debtor may liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan.

        c)      When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

        d)      In no event shall any holder of any Disputed Claim be entitled to receive (under this Plan or otherwise) any Cash payment which is greater than the amount reserved, if any, for such Disputed Claim pursuant to this Section 9.10.  In no event shall the Debtor have any responsibility or liability for any loss to or of any amount reserved under this Plan unless such loss is the result of that party's fraud, willful misconduct, or gross negligence.  In no event may any Creditor whose Disputed Claim is subsequently allowed, pursue or recover or from any

other Creditor in respect of any funds received as Distributions under the Plan.

e)    To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Debtor shall make, in accordance with the terms of this Plan, a Distribution of the excess amount reserved for such Disputed Claim in accordance with the Plan.

**9.11    No Payments of Fractional Cents or Distributions of Less Than Twenty-Five Dollars**.

a)    Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with halfpennies or less being rounded down and fractions in excess of half of a penny being rounded up.

b)    Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no Distribution of less than Twenty Five Dollars ($25) shall be made pursuant to the Plan.   Whenever any Distribution of less than Twenty Five Dollars ($25) under the Plan would otherwise be required, such funds will be retained by the Distribution Agent for the account of the recipient until such time that successive Distributions aggregate to Twenty Five ($25) Dollars, at which time such payment shall be made, and if successive Distributions do not ever reach Twenty Five ($25) in the aggregate, then such Distributions shall be returned to the Unsecured Creditor Fund.

**9.12    Setoff and Recoupment**.  Except as otherwise provided in the Plan, the Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtor may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment against the holder of any Claim.

**9.13    Payment of Taxes on Distributions Received Pursuant to the Plan**.

a)    Any contrary provision hereof notwithstanding, as a precondition to payment of any Distribution to a Creditor under this Plan, unless included on the official proof of claim form filed by such Creditor in this Bankruptcy Case, each Creditor shall provide a valid tax identification or social security number (collectively the "Tax Information") for purposes of tax reporting by the Debtor.  All Entities that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

b)    At such time as the Debtor believes that Distributions to a particular Class of Claims is likely, the Debtor shall request Tax Information in writing from the Creditors (the "Tax Information Request").  Any Creditor who fails to respond to Tax Information Request within ninety (90) days from the date posted on the Tax Information Request, shall forfeit all Distributions such Creditor may otherwise be entitled to under this Plan and such forfeited funds

will revert to the Estate to be disbursed in accordance with the terms and priorities established in this Plan.

### 9.14    Compliance With Tax Withholding and Reporting Requirements.

With respect to all Distributions made under the Plan, the Debtor will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

## ARTICLE 10 - PLAN INTERPRETATION, CONFIRMATION AND VOTING

### 10.1    Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired.

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

### 10.2    Withdrawal and Modification of Plan.

This Plan may be withdrawn or modified by the Debtor at any time prior to the Confirmation Date.   The Debtor may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation thereof.  Upon request by the Debtor, the Plan may be modified after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

### 10.3    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

### 10.4    Voting of Claims.

Each holder of a Claim as of the Record Date in Classes 1A, 1B, and 1C, shall be entitled to vote to accept or reject the Plan.  The Disclosure Statement Order shall govern the manner and procedures for casting of Ballots.

### 10.5    Acceptance by Impaired Class.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 10.6    Presumed Acceptances of Plan.

Class 2 is unimpaired under the Plan and, therefore, is conclusively presumed to have accepted the Plan.

### 10.7    Presumed Rejections of Plan.

Classes 3 and 4 are presumed to have rejected the Plan but may elect to accept the Plan.

## ARTICLE 11 - RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**    From the Confirmation Date until entry of a final decree closing the Debtor's Bankruptcy Case (pursuant to 11 U.S.C. §350 and Bankruptcy Rule 3022), the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Bankruptcy Case for the following purposes:

a)    to hear and determine any and all objections to the allowance of any Claim or Administrative Expense Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other parties in interest;

b)    to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

c)    to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

d)    to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court.

e)    to enforce and interpret the provisions of this Plan and the Confirmation Order;

f)    to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

g)    to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

h)    to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and the intent of this Plan;

i)    to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

j)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

**12.1**    **Headings**.

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

### 12.2    No Attorneys' Fees.

No attorneys' fees with respect to any Claim or Interest shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

### 12.3    Notices.

Except as otherwise specified in the Plan, all notices in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing. All communications shall be deemed sent if sent to the Debtor at the following addresses:

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
200 W. 41st St., 17th Floor
New York, New York 10036
Attn: Tracy L. Klestadt, Esq.

### 12.4    No Discharge.

The Debtor shall not receive a discharge under the Plan.

### 12.5    Claims In Dollars.

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the Wall Street Journal on the Confirmation Date.

### 12.6    Binding Effect.

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).   The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Debtor's Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Dated: New York, New York
     April 11, 2016

ROXANNE GAIL CARFORA, D.O., P.C. D/B/A
AGELESS 360 MEDICAL GROUP, P.C.


By: */s/ Dr. Roxanne G. Carfora*
     Dr. Roxanne G. Carfora
     Owner


KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP


By:*/s/ Tracy L. Klestadt*
     Tracy L. Klestadt
200 W. 41st Street, 17th Floor
New York, New York 10036
Tel:  (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtor and Debtor-in-Possession*